IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

In re Application of

ROBERT CARLOS LYRA, and DELTA SUCROENERGIA S.A.,

Applicants.

**4:26CV3215**

**ORDER**

This matter comes before the court on Robert Carlos Lyra and Delta Sucroenergia S.A.'s (the "applicants") Motion for Judicial Assistance in Aid of a Foreign Proceeding. (Filing No. 2). They seek an order *ex parte* under 28 U.S.C. § 1782 for leave to serve a document subpoena and a deposition subpoena on non-party Duncan Aviation, Inc., for use in judicial proceedings they intend to commence in Brazil. For the following reasons, the request is denied at this time.

## I. BACKGROUND

This dispute originates within a family that owns and operates a group of sugar mills in Brazil. When the family divided the business, the applicants assumed the obligation to reimburse the operating costs of a private aircraft. A disagreement later arose over the scope of that obligation, and over a second aircraft said to have replaced the first, which the applicants intend to litigate in Brazil. Because that second aircraft is currently in Nebraska for maintenance, the applicants are asking this court to authorize discovery under 28 U.S.C. § 1782 from the company servicing it. The following facts are drawn from the application and supporting documents.[1]

[1] The Applicants provide the relevant background, however because this is an *ex parte* motion, the court is unaware if any of these facts are contested.

Robert Carlos Lyra ("Robert") and his sister, Elizabeth Anne Lyra Lopes de Farias ("Elizabeth"), are the only children of Carlos Benigno Pereira de Lyra Neto ("Carlos Lyra") and Nancy Virginia Karns Lyra ("Mrs. Virginia"), who founded a business group that owns and operates several sugar mills in Brazil. (Filing No. 3, at pp. 3-4; Filing No. 2-2, at para. 15). In 2012, Robert and Elizabeth entered a "Public Deed of Transaction" to divide and reorganize the group's assets. (Filing No. 3, at pp. 1-4; Filing No. 2-2, at paras. 4, 15). Under that deed, Robert took certain sugar operations, and Elizabeth and her husband, Fernando Lopes de Farias ("Fernando"), took others. (Filing No. 3, at pp. 3-4; Filing No. 2-2, at para. 15). The deed also addressed the family's private aircraft. Under Section 6.2(ii), the applicants agreed to reimburse Carlos Lyra and Mrs. Virginia each month for the cost of operating a Falcon 2000EX aircraft (the "Falcon"), up to $150,000 USD per month. (Filing No. 3, at p. 2; Filing No. 2-2, at paras. 5, 16). The applicants represent that Carlos Lyra was in good health at the time and flew on the Falcon often. (Filing No. 2-2, at para. 16).

Carlos Lyra subsequently died on August 20, 2017. (Filing No. 3, at p. 4; Filing No. 2-2, at para. 18). In or around September 2017, the Falcon was returned to its lessor (Wells Fargo), and the applicants ceased the monthly payments on the grounds that no Falcon expenses were being incurred. (Filing No. 3, at p. 4; Filing No. 2-2, at paras. 6, 18). The applicants claim that no reimbursement demand was made at that time, as Carlos Lyra had been the Falcon's primary user and it was understood that nothing was owed. (Filing No. 3, at p. 4; Filing No. 2-2, at para. 18).

In 2021, roughly four years after the Falcon's return, Elizabeth and Fernando began demanding that the applicants resume the monthly payments, but for a different aircraft – a Gulfstream G150 (the "G150"). (Filing No. 3, at pp. 4-5; Filing No. 2-2, at paras. 7, 19). The G150 is registered to "EF Investimentos e Participações Ltda." ("EF"), a holding company owned by Elizabeth and Fernando's children, Carlos Farias and Maria Christina. (Filing No. 3, at p. 5; Filing No. 2-2, at paras. 7, 19). The aircraft is operated by the Brazilian charter company "Sociedade de Taxi Aéreo do Nordeste Ltda." ("SOTAN"),

which the applicants allege is controlled by Elizabeth and Fernando. (Filing No. 2-2, at paras. 7, 19). Elizabeth and Fernando made the demand in the name of Elizabeth and Robert's mother, Mrs. Virginia, asserting that the G150 replaced the Falcon and that the reimbursement obligation should resume on her behalf. (Filing No. 2-2, at para. 20). The applicants argue in response that Mrs. Virginia, who is 94, is no longer traveling, and that Elizabeth and Fernando are the true users and beneficiaries of the aircraft. (Filing No. 2-2, at para. 20). The sum now demanded is nearly $150,000 USD monthly, for a new total exceeding $9.6 million USD. (Filing No. 2-2, at paras. 20, 27).

These competing positions frame the dispute the applicants intend to litigate in Brazil. They argue that the continued demands unjustly enrich Elizabeth, Fernando, their children, EF, and SOTAN. (Filing No. 3, at pp. 5-7; Filing No. 2-2, at paras. 20, 25). On that basis, the applicants intend to sue those persons and entities in Brazil for unjust enrichment and for a declaratory judgment and a determination that any reimbursement obligation has ended. (Filing No. 3, at pp. 1, 6-7; Filing No. 2-2, at paras. 25-27). To date, no such action has been filed. (Filing No. 2-2, at para. 27).

To support this intended litigation, the applicants seek evidence of how the G150 is actually used. They request the aircraft's records, including its complete flight logbooks, passenger manifests, maintenance and service records, ownership and registration records, invoices and operational cost records, and communications concerning the aircraft from 2021 to present. (Filing No. 2-2, at paras. 12, 25-26). The G150 is currently undergoing maintenance at the Duncan Aviation ("Duncan") facility in Lincoln, Nebraska. (Filing No. 3, at p. 3; Filing No. 2-2, at para. 11). On that basis, they are asking this court to authorize two subpoenas direct at Duncan under 28 U.S.C. § 1782. The first would require Duncan to produce the records described above. (Filing No. 2-3, the proposed subpoena for documents). The second would require a corporate representative from Duncan to provide deposition testimony on the same subjects. (Filing No. 2-4, the proposed subpoena for deposition testimony).

## II. LEGAL STANDARD

The applicants seek leave to serve their subpoenas under 28 U.S.C. § 1782. Pursuant to that statute, a United States district court may order a resident of the district to produce documents or give testimony for use in a foreign or international tribunal. The request for discovery can be made "upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person before the court." 28 U.S.C. §1782(a). "To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure." *Id.* To pursue discovery under the statute, three requirements must be met: (1) the application must be made by an interested person; (2) the target of the subpoena must reside or be found in the district; and (3) the discovery must be for use in a pending or reasonably contemplated proceeding before a foreign or international tribunal. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 246-47, 259, 264 (2004); *ZF Automotive US, Inc. v. Luxshare, Ltd.*, 596 U.S. 619, 632 (2022).

An interested person is not limited to a formal litigant. The term reaches any person who can be said to "possess[es] a reasonable interest in obtaining the assistance." *Intel*, 542 U.S. at 256-57 (*quoting* Smit, International Litigation Under the United States Code, 65 Colum. L. Rev. 1015, 1027 (1965)); *see also In re Letter of Request from the Crown Prosecution Serv. of the U.K.*, 870 F.2d 686, 689-90 (D.C. Cir. 1989). A "pending or reasonably contemplated proceeding" does not require that the proceeding already be underway. The Supreme Court has held that "Section 1782(a) does not limit the provision of judicial assistance to 'pending' adjudicative proceedings." *Intel*, 542 U.S. at 258. It is enough that a dispositive ruling be within reasonable contemplation. *Id.* at 259. The D.C. Circuit has applied that same standard to ask whether there was "sufficient indication that a proceeding in court would eventuate" in which the evidence could be weighed impartially, and has required "reliable indications of the likelihood that proceedings will be

instituted within a reasonable time" before assistance is granted. *Crown Prosecution Serv.*, 870 F.2d at 691, 693.

Meeting these requirements authorizes assistance, but does not compel it. Even when they are met, the district court is certainly not required to grant a § 1782 application, which ultimately rests within the court's discretion. *Intel*, 542 U.S. at 264. When exercising this discretion, the Supreme Court in *Intel* identified the following additional factors to be considered: (1) whether the target is a participant in the foreign proceeding; (2) the nature of the foreign tribunal and its receptivity to federal-court assistance; (3) whether the request conceals an attempt to circumvent foreign proof-gathering restrictions; and, (4) whether the request is unduly intrusive or burdensome, which if so may be rejected or narrowed. *Id.*, at 264-65.

## III. ANALYSIS

Based upon the evidence submitted, the court finds that two of the three statutory requirements are plainly met. The applicants are interested persons because they intend to initiate the contemplated Brazilian proceedings themselves, as the prospective plaintiffs seeking unjust enrichment and declaratory relief against Elizabeth, Fernando, and the other named parties. (Filing No. 2-2, at paras. 9-10, 24). *See Intel*, 542 U.S. at 256-57. The residency requirement is also met because the target Duncan Aviation is located in or around Lincoln, Nebraska and is accordingly within this district.

Satisfaction of the third statutory factor is less certain. No lawsuit has been filed in Brazil and there is no pending foreign or international tribunal currently tasked with resolving the alleged dispute. While the applicants are correct that there need not be an actual pending matter, but only reasonable contemplation of one, the showing of intent here rests entirely on the representations of the applicants' Brazilian counsel who represents only that "judicial proceedings [are] about to be initiated in Brazil." (Filing No. 2-2, at para. 27). He does not attach a proposed pleading, nor does he identify specifically which tribunal will be tasked with litigating the issue(s), although he does identify the potential claims to be asserted. Notably, it appears the dispute over the aircraft cost reimbursement

has existed since 2021, yet the applicants have still not initiated a proceeding in Brazil. (Filing No. 2-2, at para. 19). But regardless, the court finds that resolution of this third factor to be unnecessary as the *Intel* discretionary factors still warrant denial of the request. *See In Re Montilla*, 2020 WL 2571175, at *4-5 (D. Neb. May 21, 2020) (declining to resolve reasonable contemplation requirement and denying on the *Intel* factors).

In particular, the court finds under the fourth *Intel* factor that the discovery requests as drafted are unduly intrusive or burdensome. *Intel*¸ 542 U.S. at 265; *see also* Fed. R. Civ. P. 45(d)(1) (party issuing a subpoena must take reasonable steps to avoid imposing undue burden on the person subject to it). Here, there is no assurance that Duncan possesses most of what the subpoenas demand, or that it can testify to it. A subpoena reaches only documents within the recipient's possession, custody, or control. Fed. R. Civ. P. 45(a)(1)(A)(iii). The applicants' submission only infers that because the G150 is undergoing maintenance in Lincoln, Duncan must hold the records reflecting the aircraft's entire use history over several years. (Filing No. 2-2, at paras. 11-12). But the demand reaches well beyond maintenance records. The applicants also seek complete flight logbooks and logs, passenger manifests, ownership and registration records, and records of the G150's operational costs, including fuel, crew, insurance, and hangar expenses. (Filing No. 2-3). The deposition subpoena compounds the problem, demanding that a Duncan corporate representative be prepared to testify about the aircraft's ownership and operation, every passenger and trip, and the costs of operating the aircraft. (Filing No. 2-4). That the aircraft is physically present at Duncan does not establish that Duncan possesses records of who flew on it, who owns it, or what it costs to operate, much less that it can furnish a witness to testify to those matters.

While the applicants' Brazilian counsel broadly represents that "it is customary in the aircraft industry" for the target to have these documents, there is no indication that the affiant has any particular knowledge or expertise as to what may or may not be customary in the aircraft industry. (Filing No. 2-2, at para. 12). He provides, for example, no citation or reference to federal law or regulations indicating that an aircraft maintenance company

would be in possession of all flight records, regardless of the type of maintenance required or scheduled. There is further no allegation that Duncan manages the aircraft's ongoing flight operations or that it again would have particular information or knowledge concerning every flight, every passenger manifest, all crew information, or all operational costs incurred since the aircraft's acquisition by EF in 2021 as alleged in the materials. (*See* Filing No. 2-2, at paras. 11-12, 25).

But even presuming Duncan holds some of the records now sought, there are undoubtedly less-intrusive means of obtaining them, including from the defendants they intend to sue. By the applicants' own account, the owner, operator, and the individuals they will name as defendants likely possess these records and are subject to the Brazilian courts' jurisdiction. (Filing No. 3, at pp. 5-7; Filing No. 2-2, at paras. 19, 25). Indeed, the aircraft is operated by the Brazilian charter company SOTAN, which is allegedly controlled by Elizabeth and Fernando. Those defendants can be made to produce the records in the Brazilian proceedings. It is not clear why the applicants instead seek the same records, and a deposition about them, from a non-party whose only apparent connection to the dispute is that the aircraft is sitting in its shop. There is also no showing that Duncan is responsible for retaining many of the documents the applicants now seek, with federal regulations seemingly imposing those requirements primarily on the registered owner or operator and/or the private aircraft pilot. *See e.g.*, 14 C.F.R. § 91.417 (maintenance records) and 19 C.F.R. §122.22 (passenger manifests/logbooks).

To be sure, an applicant need not seek the material abroad first, and its availability in the foreign forum is not a prerequisite to relief. *Intel*, 542 U.S. at 260-63. But that availability still matters to the burden inquiry. When the same records can be obtained from the parties within the foreign court's reach, compelling them from a non-party in this district may be unduly burdensome, particularly where the applicant offers no reason why the foreign parties cannot supply them. *See* *Montilla*, 2020 WL 2571175, at *6-7 (finding requests unduly burdensome in part because persons and entities within the foreign court's jurisdiction could provide the information and the applicant failed to explain why they

could not). The applicants give no such reason here. They do not contend that the defendants are unable to produce the requested records in Brazil, or what other efforts, if any, they previously made to obtain the records. On this record, the subpoenas ask a Nebraska non-party to shoulder a burden that properly belongs to the parties in the foreign dispute.

The breadth of the requests again supports this conclusion. Beyond the categories already noted, the document subpoena sweeps in all documents and communications relating to the aircraft over a period exceeding four years. (Filing No. 2-3). The deposition subpoena is similarly broad and seeks inquiry covering twelve different areas of examination. (Filing No. 2-4). A Rule 30(b)(6) deposition compounds this burden beyond what a document request alone would impose, since it requires the responding party to designate a knowledgeable representative, prepare that person to testify fully on each noticed topic, and stand bound by the resulting testimony, an undertaking courts have recognized as inherently onerous. *See Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 638-39 (D. Minn. 2000) (recognizing that "the burdens imposed by Rule 30(b)(6) are as taxing as they are mutually beneficial" and that preparing a knowledgeable witness "may be an onerous one").

In *Montilla*, the applicant served sweeping requests on a non-party for records that persons within the foreign court's reach could have supplied. The court there found the requests unduly burdensome and denied the application altogether, rather than undertake to narrow it. *Montilla*, 2020 WL 2571175, at *6-7. The same is true here. The applicants seek broad, untailored categories from Duncan when the prospective defendants in Brazil are the ordinary sources of those records. As in *Montilla*, the burden of curing that mismatch should not fall on the court to rewrite the subpoenas. A court may reject an overbroad request, not merely trim it. *Intel*, 542 U.S. at 265.

For these reasons, IT IS ORDERED that the Application for an Order Pursuant to 28 U.S.C. § 1782 (Filing No. 2), is accordingly denied.

Dated this 5th day of August, 2026.

BY THE COURT:

s/ Ryan C. Carson
United States Magistrate Judge